**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **FOREST CITY REHAB AND NURSING CENTER, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | **Case: 1:25-cv-12606** |
| | ) | |
| **MEHMET OZ,** | ) | **Honorable Judge Rowland** |
| **in his official capacity as** | ) | |
| **the Administrator for the Centers for** | ) | |
| **Medicaid and Medicare Services** | ) | |
| | ) | |
| **Defendant.** | ) | |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff, Forest City Rehab and Nursing Center LLC, (hereinafter "Plaintiff" or "Plaintiff Facility") brings this action to address errors made by CMS in assessing alleged deficiencies in schizophrenia assessments at Plaintiff's skilled nursing care facility; these errors were factored into the CMS Five Star Nursing Home Quality Rating System without a fair, impartial hearing in violation of Due Process. These errors have already cost Plaintiff actual and reputational damages in excess of $200,000, and, if not corrected, will continue to impair its position in the competitive market, reduce its Medicaid reimbursement rates, and thwart its ability to effectively serve their residents.

The Five-Star Rating is used not only by consumers to choose which facility to place their loved one, but also by CMS to determine, among other things, reimbursement rates and fees for services for residents. While Plaintiff is entitled to a hearing regarding the alleged deficiencies under federal and state laws prior to imposition of penalties, here Defendant has denied Plaintiff

the opportunity to contest the assessment at a fair and impartial evidentiary hearing. Furthermore, CMS has violated the Administrative Procedures Act in pursuing this audit, as it falls outside of the survey enforcement authority granted to them.

Plaintiff seeks to require Defendant Mehmet Oz, in his official capacity as Administrator for Centers for Medicare and Medicaid Services, to comply with CMS Medicare and Medicaid regulations to conduct an impartial hearing and forego imposition of penalties unless and until due process is served in compliance with the Federal rules and regulations. The failures by the Defendant to afford Plaintiff the opportunity to refute a finding of erroneous coding for the diagnosis of schizophrenia and/or the use of antipsychotic medications, and then penalize Plaintiff, is prohibited by due process rights awarded under the Fourteenth Amendment to the United States Constitution.

## I.  JURISDICTION AND VENUE

This action arises under the Federal Medicaid Act and its implementing regulations. Jurisdiction of this court is invoked to secure protection to redress the deprivation under color of state law, statute, custom and/or usage of a right, privilege and/or immunity guaranteed to Plaintiff by the United States Constitution and by 42 U.S.C. §1983 and other Acts of Congress and is proper under 28 U.S.C. §§ 1331 and 1334(a)(3). Venue lies in this forum pursuant to 28 U.S.C. § 1391(e).

## II.  PARTIES AND RELEVANT AGENCIES

1. Plaintiff Forest City Rehab and Nursing Center LLC is a skilled nursing facility located at 321 Arnold Avenue, Rockford, IL 61108.

2. Defendant Mehmet Oz is the Administrator of the Centers for Medicare and Medicaid Services, and at all times material to this Complaint acted under color of federal law in

administering the regulations, customs, policies, and practices material herein. Defendant Oz is sued in his official capacity only.

3. The Centers for Medicare and Medicaid Services ("CMS") is the agency within the Department of Health and Human Services that is responsible for the Medicare and Medicaid programs.

### III. STATEMENT OF FACTS

4. Medicaid is a federal and state program that helps cover the cost of medical care for certain low-income people, including those with disabilities. CMS oversees state agencies, like Illinois' Healthcare and Family Services ("HFS"), in administering their Medicaid programs to ensure compliance with federal guidelines.

5. Plaintiff Facility is a participating Medicaid provider.

6. CMS contracts with state agencies to conduct compliance surveys, or audits, of participating skilled nursing facilities to determine compliance by providers of services with conditions of participation in the Medicaid programs. 42 U.S.C. § 1395aa.

7. Additionally, skilled nursing facilities must submit quality measurement data when requested by CMS. 42 C. F. R § 413.360.

8. With standard audits, state agency surveyors, or CMS and their contracted surveyors, record violations, known as "deficiencies," and rate them according to scope and severity. 42 C.F.R. § 488.408. The deficiencies are then referred to CMS for enforcement actions.

9. Enforcement actions may include program disqualification, temporary management, denial of reimbursement payments, state monitoring, transfer of residents, closure of the facility, directed plans of correction and training, and civil money penalties. *Id.*

10. Additionally, 42 CFR § 488.331 requires that CMS and the State, as appropriate, offer skilled nursing facilities, nursing facilities, and dually participating facilities an informal opportunity

to dispute cited deficiencies upon the facility's receipt of the Statement of Deficiencies and Plan of Correction, Form CMS-2567.

11. CMS is required to make an appeal procedure available "to a Nursing Facility (NF) that is dissatisfied with a State's finding of noncompliance that has resulted in one of the following adverse actions: (i) Denial or termination of its provider agreement. (ii) Imposition of a civil money penalty or other alternative remedy." 42 C.F.R. §431.151.

12. The State must give the facility a full evidentiary hearing for any of the actions specified in § 431.151, with limited exceptions not applicable here. 42 C.F.R.. § 431.153.

13. As part of the Nursing Home Reform Act ("NHRA"), Congress established the Nursing Home Compare website. 42 U.S.C. §1395i-3(i); 42 U.S.C. §1396r(i). It did so as an informational tool for consumers to compare nursing homes.

14. Under NHRA Nursing Home Compare, CMS established a Five-Star Rating system that periodically calculates and assigns each skilled nursing facility a rating for performance on specified domains (including various quality measures, staffing and survey performance) and an "overall" rating. Star ratings range from a low of "1" to a high of "5" for its each of its domains and the overall rating.

15. The deficiencies, as well as the star ratings, are reflected on the Nursing Home Compare CMS website at www.medicare.gov/nursinghomecompare.

16. In 2016, CMS began onsite schizophrenia surveys to address a growing concern regarding the erroneous coding of schizophrenia, and consequent use of antipsychotics, in nursing facilities.

17. In 2022, CMS approved Illinois State Plan Amendment 22-0009, which established incentive payments for skilled nursing facilities based upon their Five-Star Ratings under the Illinois Medicaid program. Under this methodology of SPA 22-0009, a skilled-nursing facility

received a quality payment (at differing amounts) if it had an overall Five-Star Rating between "2" and "5."

18. On January 18, 2023, CMS issued QSO-23-05-NH ("QSO 23-05"), which purported to authorize a third-party contractor (rather than surveyors) to review the comprehensive assessments and resulting Minimum Data Set ('MDS") coding completed by the skilled nursing facilities for any residents of the facility diagnosed by their physicians with schizophrenia and ostensibly determine whether the schizophrenia diagnosis was accurate. This program is known as the Minimum Data Set Schizophrenia Audit Program (the "Program"). Minimum Data Set (MDS) 3.0 for Nursing Homes and Swing Bed Providers, CENTERS FOR MEDICARE & MEDICAID SERVICES, https://www.cms.gov/medicare/quality/nursing-home-improvement/minimum-data-sets-swing-bed-providers (last accessed July 8, 2025).

19. The CMS memo did not cite to any authority that would allow CMS to perform these schizophrenia audits outside the existing regulatory framework; rather, it cited only to a White House Fact Sheet that states that CMS will launch a new program to identify problematic diagnoses to bring down the inappropriate use of anti-psychotic medications.

20. Nor did the CMS memo cite to any authority that permits the delegation of survey authority to a private entity.

21. The CMS memo explained that facilities selected for an audit will receive a letter explaining the purpose, the process, and instructions for compliance. During the process, the facilities will be able to ask questions, and, at the conclusion of the audit, it will have the opportunity "to discuss the audit results with CMS." *See again QSRG Memo QSO-23-05-NH.*

22. Additionally, the memo states that the Informal Dispute Resolution and Independent IDR processes give nursing homes an informal opportunity to dispute citations from the audit. It explains that although in the past, the results of the audit were not publicly posted on Nursing Home Care Compare until the dispute process was complete. However, to be more transparent, CMS will begin displaying citations on nursing Home Care Compare, but with a note that they are under dispute.

23. Through its audit contractor, Myers and Stauffer, LC, CMS conducted an audit of Plaintiff Facility to assess the accuracy of MDS data, specifically the appropriate assessment and coding a diagnosis of schizophrenia for residents. It is unknown what standards were utilized by the third-party contractor to measure the accuracy of the schizophrenia diagnosis, as such criteria has never been disclosed.

24. On April 21, 2025, Plaintiff received a letter from CMS informing the facility that, based on the reviewed documentation, there was erroneous coding of the schizophrenia diagnosis and/or the use of antipsychotic medications.

25. The letter cited the deficiencies and detailed the consequences of the audit:

> *As a result of this audit, your facility's Five Star Quality Measure (QM) Ratings will be adjusted as follows:*
> - *Your Overall QM and Long-stay (LS) QM ratings will be downgraded to one star for six months. (Note: This will reduce your overall star rating by one star.)*
> - *Your Short-stay QM rating will be suppressed for six months.*
> - *Your LS Antipsychotic QM will be suppressed for 12 months.*

26. The letter explained the expectation that all identified issues would be corrected immediately and the MDS assessments be corrected, based on the MDS 3.0 Resident Assessment Instrument Manual requirements.

27. The letter failed to notify the Plaintiff of the right to appeal to appeal the determination.

28. Plaintiff has a property interest in the compensation that it receives for the services that it performs. That compensation is directly affected by the results of the above-described audits, as is the reputational interest of the facility. In *Board of Regents of State Colleges v. Roth*, the Supreme Court held that "a legitimate claim of entitlement" to a benefit is a property interest sufficient to trigger due process. 408 U.S. 564, 577 (1974).

29. As a result, the lack of appeal rights information in the notice, as well as the immediate downgrade and publication of the alleged deficiencies prior to a fair hearing, violated the Plaintiff's constitutional right to Due Process under the Fourteenth Amendment. U.S. CONST. Amend. XIV, § 1.

30. Per *Goldberg v. Kelly*, 397 U.S. 254, at 264-266 (1970), to comply with the Due Process guarantees under the United States Constitution, the Defendants must provide the Plaintiffs with a meaningful notice that apprises of their right to appeal.

31. With traditional surveys and audits, although the alleged deficiencies are posted online prior to any dispute resolution, the Five-Star Rating is not downgraded until after the completion of the dispute process. *See* 2023 CMS Memo.

32. However, with the schizophrenia audits at issue, Defendant uploads survey results prior to completion of the informal dispute resolution, as outlined in the 2023 CMS memo. The Plaintiff Facility's 5-Star Rating was subsequently downgraded, at least in part, based on the uploaded survey results.

33. The posting of unreviewed deficiencies, and use of these deficiencies in calculating the CMS Five-Star Rating, has a profound and negative impact on the Plaintiff Facility and other similarly situated skilled nursing homes.

34. Medicare Patients who are residents of one-star or two-star facilities are not allowed to access their benefits on the same level as patients who go to three-star and above facilities.

35. For example, the "3-night stay waiver" allows Medicaid beneficiaries to waive the three-night inpatient hospital stay requirement prior to admission into a skilled nursing facility. However, to participate in the waiver program, the facility must maintain at least a three-star rating. This restricts the choice of facility that patients have available to them if they want to access Medicare benefits for their first one hundred days.

36. Low star ratings affect the facility's Medicaid reimbursement rates and other payments. Illinois has begun to use a value-based payment program to incentivize nursing home performance. The value-based payment program metrics include CMS's Five-Star Rating. *See Nursing Home Value-Based Payment Matrix*, National Academy for State Health Policy, https://nashp.org/state-medicaid-value-based-payment-incentivizes-staffing-in-nursing-homes/#matrix (last accessed August 7, 2025).

37. Low star ratings preclude participation in insurance service networks, accountable care organizations, and preferred provider networks. They can also affect terms and conditions provided by lenders, including the U.S. Department of Housing and Urban Development. Moreover, each deficiency is considered during future surveys in a cumulative aspect as well as the determination of subsequent remedies.

38. In late 2025, CMS began informing skilled-nursing facilities, including the Plaintiff, that if Myers & Stauffer continued to conclude that a skilled-nursing facility's diagnoses were inaccurate, that the facility's Quality Measure (QM) ratings would continue to be downgraded, citing again only to QSRG Memo QSO-23-05-NH for support ("CMS will monitor each audited facility's data to identify if the information indicates they have addressed the identified

issues, and if any downgrades or suppressions that are applied should be lifted . . .").  In fact, such reductions continue in the QM domains and operate to reduce overall skilled-nursing facilities' Five-Star scores, including Plaintiff's scores.

39. Defendant is adjusting the CMS Five-Star Rating calculations without first providing an evidentiary hearing to Plaintiff.

## IV. CAUSES OF ACTION

### COUNT ONE - VIOLATIONS OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

40. Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

41. Defendant is acting independently in conducting audits traditionally completed in concert with Illinois' Medicaid agency, Illinois Healthcare and Family Services.  These audits do not provide the same due process protections required of the authorized audits, although the consequence for identified deficiencies is the same, which is the immediate recalculation and publication of the Five-Star Rating.

42. The Plaintiff Facility experiences devastating fiscal impact from the unreviewed reduction of its Five Star Rating.

43. Additionally, the low star rating causes reputational damage to Plaintiff Facility as consumers looking for a skilled nursing facility view the facility as less desirable and avoid admission to the facility.  This is a direct, but non-quantifiable loss to the facility.

44. The Seventh Circuit Court of Appeals recently held that Medicaid reimbursement rates are the type of entitlement that triggers due process, and the providers established a property interest such that any alteration must be conducted with due process. *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768 (7th Cir. 2021).

45. To comply with the Due Process guarantees under the United States Constitution, the Defendant must provide the Plaintiff with a meaningful notice that apprises them of the opportunity to appeal and the right to a hearing, as well as provide that hearing to them prior to the downgrading and publication of the Star Rating. *See again Goldberg,* 397 U.S. 254; 42 C.F.R.. § 431.153.

46. Defendant's failure to do so through its Schizophrenia Audit Program, is inconsistent with the Due Process Clause of the United States Constitution, Amendment XIV and the Medicaid Act, Title XIX of the Social Security Act, Title 42 § 1396a, et seq., and its implementing regulations.

47. Defendant acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of its rights, privileges, and immunities secured by the Constitution and laws by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. §1983.

48. Plaintiff therefore respectfully requests the relief as prayed for below.

## COUNT TWO – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
### Agency Action Not in Accordance with Law

49. Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

50. The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559 and 701-706, provide for judicial review to "[a]person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . ." 5 U.S.C. § 702. Under 5 U.S.C. § 706(2)(A), an agency action can be held unlawful and set aside if it is "not in accordance with law."

51. CMS is responsible for administering the Medicaid program, including the Schizophrenia Audit Program and the Five-Star Rating System.

52. Under 42 C.F.R.. § 431.153, skilled nursing facilities must be afforded with appeal rights with a fair hearing following allegation of survey, or audit, deficiencies.

53. Under SPA 22-0009, the impact of QSO 23-05 and the recent CMS notice is economically devastating. By virtue of adverse audits found by Myers & Stauffer with no right of appeal, the Plaintiff has lost (and continues to lose) incentive payments. In addition, the Plaintiff continues to suffer harm because managed care networks and insurance plans have discontinued their participation in provider networks because of these audits. Beyond that, its reputation for providing quality skilled nursing care is being irreparably harmed.

54. The continued viability of the Plaintiff's skilled-nursing facility and their ability to provide care for their residents is seriously threatened.

55. CMS's survey and enforcement policies for the Schizophrenia Audit Program deprives Plaintiff of due process because the Facility as it is not advised of its appeal rights in the notices regarding the schizophrenia audit results.

56. Additionally, the procedure of posting of the recalculated star rating prior to any review denies Plaintiff due process by making the appeal process moot; the financial and reputation harm has already occurred.

57. Accordingly, CMS has acted contrary to law and failed to follow its own rules.

58. Plaintiff therefore respectfully requests the relief as prayed for below.

<u>**COUNT THREE – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT**</u>

**Arbitrary and Capricious Agency Action and Contrary to Law**

59. The Nursing Home Reform Act ("NHRA") established a framework for the certification of skilled nursing facilities in the Medicare and Medicaid programs. Certification is explicitly premised on, among other things, the facilities using resources effectively and efficiently to

attain or maintain the "highest practicable physical, mental, and psychosocial well-being of each resident[.]" 42 U.S.C. §1395i-3(d)(I)(A); 42 U.S.C. § 1396r(d)(I)(A).

60. Further, the regulations promulgated by CMS under the NHRA requires each resident in a facility to "remain under the care of a physician" or other qualified health care professional, who supervises "the medical care of each resident." 42 CFR § 483.30.

61. To measure and enforce skilled-nursing facilities compliance with certification requirements, the NHRA established survey and enforcement processes to do so. 42 U.S.C. §1395i-3(g) and (h); 42 U.S.C. §1396r(g) and (h). This is the only way Congress established the review of skilled nursing facilities' practices regarding the care and treatment of residents and resulting enforcement if non-compliance was identified. Associated with the survey and enforcement system is an appeal system (established through the Departmental Appeals Board), which handles appeals made by SNF for specified enforcement action.

62. As above, the NHRA, nor any other federal rule or regulation, does not grant CMS any clear, statutory authority to create regulatory enforcement standards for these schizophrenia audits. CMS does not possess any authority to weaponize the Five Star Rating System to enforce compliance with the arbitrary, unauthorized standards, and it cannot use the pretext of facility certification standards to do so.

63. As such, the manner in which CMS is conducting the Schizophrenia Audit Program is antithetical to the above regulation; skilled-nursing facilities do not control the professional judgment of those treating physicians, including what diagnosis a physician will give to an individual patient. However, Plaintiff is essentially being forced to demand that its physicians arbitrarily reduce the number of residents diagnosed with schizophrenia, despite being

statutorily obligated to maintain the "highest practicable . . . mental . . . and psychosocial well-being of each resident."

64. This discriminates against individuals with schizophrenia who require long-term, skilled nursing care, and it operates to reduce access to necessary care and services and punishes the Plaintiff for diagnosis' that it does not have the professional authority to make. The Plaintiff is not a physician and only executes the physician's orders, including prescribing medication. The Plaintiff is being punished for medical decisions not within its control.

65. Arbitrarily decreasing the number of schizophrenia diagnoses in this manner within a skilled nursing facility is not a rational way to appropriately reduce the use of unnecessary antipsychotics, and QSO 23-05 and the 2025 action is not reasonably related to its "authorizing" Fact Sheet. As above, the memos do not cite to any authority granting CMS power to conduct these audits outside of the established survey enforcement procedures.

66. As above, Section 706 of the Administrative Procedure Act expressly provides that a reviewing court "shall . . . set aside agency action" found to be "in excess of statutory jurisdiction, authority, or limitations" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

67. As such, CMS has violated Section 706 through its implementation of the Schizophrenia Audit Program, which weaponizes the Five-Star Rating System to hold skilled nursing facilities to standards that Defendant was never authorized to make.

### COUNT FOUR – DECLARATORY JUDGMENT

68. Plaintiff incorporates all paragraphs set out above as if fully set forth herein.

69. Defendant's Schizophrenia Audits Program, with the subsequent calculation and publication of the Facility's Five-Star Rating, is a final agency act that is reviewable 5 U.S.C. § 704 and 28 U.S.C. § 2201.

70. An actual controversy exists between Plaintiff and the Defendant regarding the calculation and publication of Facility's Five-Star Rating adjustment following a schizophrenia audit wherein Plaintiff was not given an appeal and fair hearing to dispute the alleged coding deficiencies.

71. Pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff seeks declaratory relief by this Court. A declaratory judgement will serve a useful purpose and resolve the controversy between the parties. *Smith & Usaha*, supra note 2, at 116 (collecting cases); *see also Green v. Mansour*, 474 U.S. 64, 74 (1985).

### V. REQUESTS FOR RELIEF

Plaintiff respectfully requests that this Court issue an order:

1. Enter judgment against Defendant and in favor of Plaintiff for each count alleged in this Complaint;

2. Declare that by forgoing the traditional survey enforcement pursuant to 42 C.F.R.§ 431.153 and 42 C.F.R. § 498.5, and failing to provide the Plaintiff with appeal rights with a fair hearing following a Schizophrenia Audit, the Defendant acted contrary to law, and order Defendant to provide a fair hearing prior to the use of the audit deficiencies for the calculation and publication of the Five-Star Rating.

3. Order that CMS keep the results of its Schizophrenia Audit internal with no publication of audit deficiencies for the calculation and publication of the Five Star Rating until participating providers have exhausted their appeal remedies;

4.         Void the violation notices issued by Defendant to Plaintiff under the Schizophrenia Audit system;

5.         Return Plaintiff to its previously awarded star rating; and

6.         Any other equitable relief that this court determines just.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

By: _/s/ Janice Morrison_